UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**SABAL TRAIL TRANSMISSION, LLC,**

       **Plaintiff,**

**v.**                                      **Case No: 5:16-cv-178-Oc-30PRL**

**3.921 ACRES OF LAND IN LAKE COUNTY FLORIDA, SUNDERMAN GROVES, INC and UNKNOWN OWNERS,**

       **Defendants.**

_____

### ORDER

In this eminent domain proceeding, Defendant, Sunderman Groves, Inc. has filed a renewed motion to compel discovery related to its request for attorney's fees and costs. (Doc. 202). For the reasons discussed below, the motion is denied.

### I.   BACKGROUND

This case was tried before a jury, which found that Defendant was entitled to $309,500 in compensation for the condemnation of its property. (Doc. 133). The District Court determined that section 73.091, Florida Statutes, governed Defendant's right to attorney's fees and costs. (*Id.*). On April 26, 2018, Defendant filed a motion seeking attorney's fees. (Doc. 141). On June 6, 2018, Defendant filed its initial motion to compel seeking discovery related to its request for attorney's fees. (Doc. 155). This court denied the motion without prejudice to Defendant filing a renewed motion more narrowly tailored to the issue. (Doc. 161). The court then granted Sabal Trail's motion to continue the hearing and associated

deadlines related to the request for attorney's fees pending the result of Sabal Trail's appeal of the final judgment. (Doc. 181).

The Eleventh Circuit has since issued its opinion (Doc. 183) and granted Defendant's motion to transfer consideration of appellate attorney's fees to this court. (Doc. 188). Now, Defendant has filed a renewed motion to compel discovery related to its request for attorney's fees and costs. (Doc. 202).

## II.   LEGAL STANDARD

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007).

The moving party "bears the initial burden of proving that the information sought is relevant." *Douglas v. Kohl's Dep't Stores, Inc.*, No. 6:15-cv-1185, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quoting *Moore v. Lender Processing Servs. Inc.*, No. 3:12-cv-205, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013)). Relevancy is based on the "tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." *Garcia v. Padilla*, No. 2:15-cv-735, 2016 WL 881143, at *2 (M.D. Fla. March 8, 2016) (quoting Fed. R. Evid. 401).

Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, the

court is guided by the non-exclusive list of factors in Rule 26(b)(1). *Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-2148, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Id.* (quoting *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014)).

In order to frame the discovery on this issue, it is essential to determine what the purpose of the discovery is. As the commentary to Rule 26 explains, "A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26. Then, of course, it is the "Court's responsibility, using all the information provided by the parties, . . . to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

### III.   DISCUSSION

Rule 54 provides the procedure for seeking attorney's fees post-judgment. The comments to the Rule allow that: "On rare occasion, the court may determine that discovery under Rules 26–37 would be useful to the parties." But it is well established that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

#### A. Florida Substantive Law

The Florida Constitution entitles property owners to "full compensation" for any land taken for a public purpose. Fla. Const. art. 10, § 6. Under Florida law, full compensation

includes a reasonable attorney's fee in order to "render the property owner as whole as possible." *Joseph B. Doerr Tr. v. Cent. Fla. Expressway Auth.*, 177 So. 3d 1209, 1215 (Fla. 2015).

By statute, attorney's fees in condemnation cases are calculated based on the "benefits achieved for the client." Fla. Stat., § 73.092(1). To determine the benefits achieved, the statute instructs the court to determine the difference "between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney." Fla. Stat., § 73.092(1)(a). The statue then provides a schedule for determining the amount of the attorney fee as a percentage of the amount of the benefit. *Id.* § 73.092(1)(c).

The Florida Supreme Court has held, however, that this procedure has the potential to undercompensate a property owner if the condemning authority leverages its superior resources to engage in "excessive litigation," unreasonably driving up the landowner's cost of litigating the case. *Doerr*, 177 So. 3d at 1215–16. Because of the constitutional requirement to provide property owners with full compensation, the Florida Supreme Court has construed § 73.092 to allow property owners to recover their attorney's fees for those hours spent defending against excessive litigation. *Id.* at 1219. The Court held "when a condemning authority engages in tactics that cause excessive litigation, the trial court shall utilize section 73.092(2) to calculate a reasonable attorney's fee, *but only for those hours incurred in defending against the excessive litigation* or that portion that is considered to be in response to or caused by the excessive tactics." *Id.* at 1217.

Section 73.09(2) provides that in awarding attorney's fees, the court should consider:

> (a)   The novelty, difficulty, and importance of the questions involved.
> (b)   The skill employed by the attorney in conducting the cause.
> (c)   The amount of money involved.
> (d)   The responsibility incurred and fulfilled by the attorney.

> (e) The attorney's time and labor reasonably required adequately to represent the client in relation to the benefits resulting to the client.
> (f) The fee, or rate of fee, customarily charged for legal services of a comparable or similar nature.
> (g) Any attorney's fee award made under subsection (1).

Fla. Stat. § 73.09(2).

Further, the statute provides that "in determining the amount of attorney's fees to be paid by the petitioner under subsection (2), the court shall be guided by the fees the defendant would ordinarily be expected to pay for these services if the petitioner were not responsible for the payment of those fees." Fla. Stat. § 73.092(3).

Therefore, to be awarded fees beyond those provided for under the 'benefits achieved formula,' Defendant must show that Sabal Trail engaged in tactics that caused excessive litigation. Once that showing is made, Defendant will need to demonstrate which of its attorney's fees and costs were caused by, or incurred in response to, that excessive litigation.

## B. Defendant's Motion to Compel

Defendant primarily claims that Sabal Trail engaged in excessive tactics relating to its challenge of the level of comparison between sales in direct comparison and paired sales comparison considered by Defendant's appraiser, both in its Daubert motion and during trial, in addition to having numerous attorneys present during the hearings and trial.

To show that Sabal Trail engaged in tactics that caused excessive litigation, Defendant seeks the production of Sabal Trail's counsel's time records, billings, invoices, or receipts of payment relating to: 1) Sabal Trail's Daubert motion (Doc. 51); 2) Sabal Trail's response to Defendant's motion for reconsideration (Doc. 86); and 3) Sabal Trail's preparation for or attendance at the pretrial conference and the jury trial. (Doc. 202-2). Additionally, Defendant requests documentation of the hourly rate charged Sabal Trail's counsel. (Doc. 202-2).

Defendant contends that this information will also be helpful to the court in determining the amount in attorney's fees that Defendant is entitled.

First, the hourly rate that Sabal Trail paid its attorneys is not relevant to whether Sabal Trail engaged in tactics that caused excessive litigation. Although Defendant claims that the rate will assist the court in determining the rate Defendant's attorneys are entitled, this is simply not the case. Even if Sabal Trail retained private attorneys that specialize in eminent domain, that does not mean that Defendant's counsel is entitled to the same hourly rate. Accordingly, Defendant's request for Sabal Trail's counsel's hourly rate is denied.

Next, the number of hours that Sabal Trail's counsel spent preparing its Daubert motion (Doc. 51), its response to Defendant's motion for reconsideration (Doc. 86), and for the pretrial conference and the jury trial are not relevant. The primary issue is whether Sabal Trail engaged in tactics that caused "excessive litigation." *Doerr,* 177 So. 3d at 1217. As Sabal Trail points out:

> Regardless of whether Sabal Trail spent 1 hour or 50 hours preparing its Daubert motion or preparing for and attending a pretrial conference or trial, such facts would not help determine the only two issues in an "excessive litigation" claim: whether the condemnor took "excessive actions" and the time the landowner's counsel incurred as a result.

(Doc. 203, at 19). The court agrees. The number of hours spent by Sabal Trail's counsel on its Daubert motion and the response to Defendant's motion for reconsideration will not assist the court in determining whether Sabal Trail caused excessive litigation.

Importantly, the court ultimately granted Sabal Trail's Daubert motion on multiple grounds, including the "level of comparison" argument that Defendant claims resulted in excessive litigation. (Doc. 71). Defendant then filed a motion to reconsider and argued that the level of comparison was a "question of weight for the trier-of-fact" and not a "true Daubert

challenge." (Doc. 76). The court granted Defendant's request for an oral argument and then entered an Order stating: "After reconsideration, the Court's Order (Doc. 71) striking Sunderman Groves's experts Ray and Harris stands." (Doc. 89).

Even so, Defendant continues to claim that Sabal Trail's challenge was not a "true Daubert challenge" and Defendant's counsel was forced to expend time and resources to respond to the allegations. (Doc. 202). Regardless, the number of hours Sabal Trail's counsel spent preparing and drafting the first meritorious motion and second meritorious response are not probative to whether it caused excessive litigation with these filings.

Additionally, Defendant contends that because of Sabal Trail's Daubert motion, its counsel was "forced" to prepare trial exhibits to show the level of comparison between sales used in direct comparison or in a paired-sales analysis, demonstrate the qualitative considerations by its new appraiser, cross examine Sabal Trail's appraiser, and show deficiencies in Sabal Trail's appraisal. (Doc. 202, p. 7-8). Even if this were the case, Sabal Trail's time spent preparing for the pretrial conference and trial will not inform the court of whether there was excessive litigation.

Notably, in *Doerr*, the court did not have to look at the condemnor's counsel's time records, tasks performed, or hourly rate when it found two instances where the condemnor caused excessive litigation. *Doerr*, 177 So. 3d at 1213. The first instance involved the use of an appraiser who made 16 assumptions in order to determine the value of the property. *Id.* To overcome these faulty assumptions, the landowner had to retain additional expert witnesses and request further services of previously retained experts. *Id.* Ultimately, the court determined the condemnor's appraiser should not be allowed to testify before the jury. *Id.* The

second instance involved the condemnor's counsel spending twice as much time deposing the landowners' experts as the landowners' counsel spent deposing the condemnor's experts. *Id.*

Moreover, although Defendant also claims that the amount of time that Sabal Trail spent on the purportedly excessive litigation will determine the fees that Defendant is entitled, the Eleventh Circuit has "generally expressed doubt about 'whether the number of hours spent on a case by [opposing] counsel is relevant to a determination of the reasonable fees.'" *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 803 (11th Cir. 2012) (quoting *Henson v. Col. Bank & Trust Co.*, 770 F. 2d 1566, 1574 (11th Cir. 1985)). Indeed, this court can make a determination of hours reasonably expended without knowing how many hours Sabal Trail has spent on the issues. Defendant's billing records would determine how much time Defendant spent in responding to "excessive litigation," not Sabal Trail's billing records.

### IV.   CONCLUSION

Accordingly, Defendant's renewed motion to compel discovery related to its request for attorney's fees and costs (Doc. 202) is **denied**.

**DONE** and **ORDERED** in Ocala, Florida on February 11, 2021.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

- 8 -