UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SABAL TRAIL TRANSMISSION,
LLC,

       Plaintiff,

v.                                                    Case No: 5:16-cv-178-JSM-PRL

3.921 ACRES OF LAND IN LAKE
COUNTY FLORIDA, SUNDERMAN
GROVES, INC and UNKNOWN
OWNERS,

       Defendants.

_____

REPORT AND RECOMMENDATION[1]

Defendant Sunderman Groves, Inc. ("Sunderman Groves") seeks an award of attorney's fees and costs incurred during this litigation. (Doc. 213). For the reasons discussed below, I recommend the motion be granted in part.

I.    BACKGROUND

On March 18, 2016, Plaintiff Sabal Trail Transmission, Inc. ("Sabal Trail") initiated this eminent domain action seeking to condemn property interests it deemed necessary for its interstate natural gas pipeline. (Doc. 1). On February 26, 2018, this case was tried before a jury which found Sunderman Groves was entitled to $309,500 in compensation for the condemnation of its property. (Doc. 133).

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

On May 1, 2018, Sabal Trail filed a Notice of Appeal. (Doc. 145). Then, on January 22, 2020, the Eleventh Circuit affirmed the district court's final judgment but dismissed the appeal of this court's determination that Sunderman was entitled to attorney's fees and costs. (Doc. 183). The Eleventh Circuit then granted Defendant's motion to transfer consideration of appellate attorney's fees back to this court. (Doc. 188). Now, Sunderman Groves requests $148,247 for attorney's fees at the district court, $106,080.15 for costs at the district court, and $325,855.50 for appellate attorney's fees. (Doc. 213).

## II.   DISCUSSION

This court previously determined that state substantive law governs the measure of compensation to be paid to Sunderman Groves. (Doc. 133). Sabal Trail challenges the request for attorney's fees and costs, arguing that federal law, not Florida law applies. Alternatively, Sabal Trail challenges the amount requested under Florida law.

Under Florida's constitutional guarantee of "full compensation," Sunderman Groves is entitled to reasonable attorney's fees. *See* Art. X, § 6(a), Fla. Const. ("No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner. . . ."); *Joseph B. Doerr Trust v. Cent. Fla. Expressway Auth.*, 177 So. 3d 1209, 1215 (Fla. 2015) ("It is [] fundamentally clear that full compensation under the Florida Constitution includes the right to a reasonable attorney's fee for the property owner."). Other courts have also determined that state substantive law governs the measure of compensation under the Natural Gas Act.[2]

---

[2]  *See, e.g., Tenn. Gas Pipeline Co., LLC v. Permanent Easement*, 931 F.3d 237 (3d Cir. 2019); *Bison Pipeline, LLC v. 102.84 Acres of Land*, 560 F. App'x 690, 696 (10th Cir. 2013); *Columbia Gas Transmission Corp. v. Exclusive Nat. Gas Storage Easement*, 962 F.2d 1192 (6th Cir. 1992); *Sabal Trail Transmission LLC v. Real Estate*, 2018 WL 2305768 (M.D. Ga. May 21, 2018); *Equitrans LP v. Real Estate*, 2017 WL 1455023 (N.D.W.V. Apr. 21, 2017); *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cty.*,

### A. "Benefits Achieved" fee award under Fla. Stat. § 73.092(1)

Section 73.092, Florida Statutes provides, "the court, in eminent domain proceedings, shall award attorney's fees based solely on the benefits achieved for the client." Section 73.092(1)(a) defines "benefits" as "the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney." Fla. Stat. § 73.092(1)(a). The statute sets a scale, taking into consideration the "benefits achieved," to calculate attorney's fees. Fee awards include 33% of any benefit up to $250,000, plus 25% of any portion of the benefit between $250,000 and $1 million.  Fla. Stat. § 73.092(1)(c)1.-2.

Sunderman Groves requests the amount of "benefits achieved" fees totalling $85,727. This is based on a benefit achieved totalling $262,900 (the difference between the final judgment of $309,500 and the last written offer before Sunderman Groves hired an attorney of $46,600). Applying the statutory sliding scale to this "benefit achieved" yields $82,500 (33% of $250,000) plus $3,225 (25% of ($262,900 - $250,000 = $12,900)) for a total "benefits achieved" fee award of $85,725.[3] Sabal Trail does not dispute the "benefits achieved" fee requested by Sunderman Groves.

Accordingly, Sunderman Grove's request for "benefits achieved" attorney's fees totaling $85,725 should be granted.

### B. "Supplemental Proceedings" fees under Fla. Stat. § 73.092

---

No. 1:16CV93-MW/GRJ, 2021 WL 1881404, at *1 (N.D. Fla. May 11, 2021); *Sabal Trail Transmission, LLC v. +/- 1.127 Acres of Land in Hamilton Cty., Fla.*, No. 3:16-CV-263-J-20PDB, 2017 WL 2799352, at *1 (M.D. Fla. June 15, 2017); *Sabal Trail Transmission, LLC v. Real Est.*, No. 1:16-CV-063-MW-GRJ, 2017 WL 2783995, at *7 (N.D. Fla. June 27, 2017).

[3] Sunderman Groves requests $85,727 in "benefits achieved" attorney's fees, but the extra $2 appears to be a scrivener's error.

In addition to the "benefits achieved" award under § 73.092(1), a landowner in an eminent domain proceeding may also pursue "attorney's fees incurred in defeating an order of taking, or for apportionment, or other supplemental proceedings, when not otherwise provided for. . . ." Fla. Stat. § 73.092(2). Notably, fees under this statute are awarded "when attorney's fees, not otherwise provided for, are incurred for required proceedings that do not result in a monetary benefit upon which a fee can be based." *Sw. Fla. Water Mgmt. Dist. v. Shea*, 86 So. 3d 582, 584 (Fla. 2d DCA 2012). Sunderman Groves requests a total of $62,520 under § 73.092(2), which includes work performed litigating the entitlement of attorney's fees, against Sabal Trail's motion for a new trial, the rehearing or relief from judgment concerning the controlling laws issue, and the controlling law over interest to be awarded.

Sabal trail agrees to Sunderman Groves's request in part but asks this Court to limit the recovery for supplemental proceedings by reducing the amount of time spent on certain matters and adjusting a material error in the time log of one attorney's rate. Additionally, Sabal Trial requests that the court exclude matters that are not "supplemental proceedings" but rather "fundamental part[s] of the proceeding[] that led to the final order of taking." *Shea*, 86 So. 3d at 585. This includes time spent on the proposed final judgment and work performed defending against Sabal Trail's motion for a new trial. These matters are fundamental to the original proceeding that led to the final order of taking, and should be excluded from the supplemental proceedings award. In total, Sabal Trail seeks a reduction in supplemental proceedings fees under § 73.092(2) from $62,520 to $39,673.

## 1. Lodestar Analysis

Florida has adopted the lodestar analysis to determine the reasonableness of an award of attorney's fees under § 73.092(2). *State, Dep't of Transp. v. LaBelle Phoenix Corp.*, 696 So. 2d

947, 948 (Fla. 2d DCA 1997). The court multiplies the number of hours reasonably expended on the litigation by the reasonable hourly rate for the services provided by counsel for the prevailing party. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Once the court has determined the lodestar, it may adjust the amount upward or downward based upon a number of factors, including the results obtained. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436). Additionally, the Court is "an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

### i.    Reasonable Hourly Rates

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates. *Id.* The trial court, itself, is an expert on the question of the reasonableness of fees and may consider its own knowledge and experience. *Id.* at 1303.

Sunderman Groves seeks the following hourly rates for the attorneys who worked on supplemental proceedings: $450 and $500/hour for Andrew Brigham, $350/hour for Trevor Hutson, $275 and $325/hour for E. Scott Copeland, and $275/hour for Brett S. Tensfeldt, and $275/hour for Chris C. Bucalo. Sabal Trails requests that the court lower E. Scott Copeland's rate to $275/hour because although the time log indicates that his rate increased to $325/hour "commencing in 2018," Copeland did not bill any time to this case prior to March 2018. Yet he billed 30.7 hours at $275/hour and 22.6 hours at $325/hour. (Doc. 213-1).

Sunderman Groves has provided the declaration of Andrew Prince Brigham to set out the relevant experience of the attorneys who have worked on this case at the district court level. (Doc. 213-3). Mr. Brigham has nearly 30 years of experience representing property owners in property rights matters such as eminent domain cases. (*Id.*). Mr. Hutson began practicing law in 2013 and has two years of experience with working with landowners and developers on real estate development issues and five years of experience in eminent domain and other property rights issues. (*Id.*). Mr. Copeland began practicing law in 2015 and has nearly six years of experience representing property and business owners in eminent domain and other property rights issues. (*Id*). Mr. Tendfeldt began practicing law in 2016 and has four years of experience representing property and business owners in eminent domain and other property rights issues. (*Id.*). Mr. Bucalo began practicing law in 2018 and now has spent the past three years representing property and business owners in eminent domain and other property rights issues. (*Id.*).

Considering the experience of the attorneys, the court finds the requested hourly rates reasonable. *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cty.*, No. 1:16CV93-

MW/GRJ, 2021 WL 1881404, at *16 (N.D. Fla. May 11, 2021) (finding, in a similar legal community, these rates reasonable). However, because it is impossible to discern when in 2018 Mr. Copeland's rate changed from $275/hour to $325/hour, the court should award a rate of $275/hour for any work done in 2018, and $325/hour for work done in 2020 and 2021.

ii.      *Number of hours reasonably expended*

As discussed above, fees should not be awarded for any time spent on the proposed final judgment or work performed defending against Sabal Trail's motion for a new trial. This includes 5.3 hours by Mr. Brigham (entries dated March 24-April 3, 2018) and 3.3 hours by Mr. Copeland (entries dated March 25-April 3, 2018). (Doc. 213-1). Sabal Trail also requests that any entries associated with the withdrawn claim of excessive litigation be removed. The attorneys struck through much of the hours relating to the excessive litigation claim, but a few remained on the time sheets. (Doc. 213-1). Therefore, 1.7 hours spent by Mr. Copeland (entries dated April 14, 2018, May 16, 2018, and June 1, 2018) working on discovery disputes involving the withdrawn claim of excessive litigation are due to be removed as well.

Sabal Trail also requests the removal of two-time entries totaling 1 hour by Mr. Copeland (entries dated May 7, 2018 and May 9, 2018) that state "Email to APB re: numbers for cases affected by Walker/Corrigan Orders on atty's fees and costs." (Doc. 213-1). Presumably, this is related to the two cases deciding that Florida state law applies to attorney's fees in eminent domain cases. *See Sabal Trail Transmission, LLC v. Real Est.*, No. 1:16-CV-063-MW-GRJ, 2017 WL 2783995, at *7 (N.D. Fla. June 27, 2017); *Sabal Trail Transmission, LLC v. +/- 1.127 Acres of Land in Hamilton Cty., Fla.*, No. 3:16-CV-263-J-20PDB, 2017 WL 2799352, at *1 (M.D. Fla. June 15, 2017). Indeed, it is unclear what "numbers for cases affected" by

the decisions on the attorney's fees issues is referring to, and how it pertains to the instant case. Therefore, Mr. Copeland's time is due to be reduced by 1 hour.

Sabal Trail asserts that the time spent litigating fees and costs should also be reduced. In total, Sunderman Groves requests payment for 94.1 hours for litigating fees and costs.[4] The parties agree that while time spent litigating the *amount* of attorney's fees is not compensable, time spent litigating the *entitlement* to fees is compensable. *Dep't of Transp., State of Fla. v. Robbins & Robbins, Inc.*, 700 So. 2d 782, 785 (Fla. 5th DCA 1997). In the time sheets, the attorneys have indicated that they have marked in grey shading the time entries related to tasks associated with defending both the amount and entitlement of attorney's fees and have recorded the time at 50% of the total time expended. (Doc. 213-1). Sabal Trail rejects this assertion and argues that Sunderman Groves has essentially block billed the attorney's time litigating fees and costs without segregating awardable and non-awardable time.

Generally, "[b]lock billing occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres EnvtI. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012). The problem with block billing is that it "results in 'imprecision' in an attorney's records[,] . . . [a] problem for which the opponent should not be penalized." *Id*. Here, the entries identify that the attorneys spent time preparing the initial motion for attorney's fees and costs (Doc. 184) as well as the instant motion and attached exhibits. Although the entries do not segregate time spent on the issue of entitlement of fees versus amount of fees, the attorneys have already reduced the entries by 50%. Although the court previously decided that Florida law governed

---

[4] This includes 22.9 hours by Mr. Hutson, 27.7 hours by Mr. Bucalo, 5.0 hours by Mr. Copeland, and 38.5 hours by Mr. Brigham.

the issue of compensation to be paid to Sunderman Groves, the parties still had to litigate the categories of fees they were entitled. Therefore, Mr. Brigham's and Mr. Copeland's 50% reduction of time spent on tasks defending both the amount and entitlement of attorney's fees is reasonable.

Further, Sabal Trail argues that only Mr. Copeland's and Mr. Brigham's timesheets indicate that the "time entries do not include timekeeping solely related to task associated with defending the amount of attorney's fees." (Doc. 213-1 at 8, 13). However, Mr. Bucalo's and Mr. Hutson's timesheets contain entries specifically related to litigating costs and identifying expert witnesses for whose work the defendant seeks compensation, and makes no mention of any tasks associated with defending the amount of fees. (Doc. 213-1 at 9, 14).

Accordingly, the reasonable number of hours expended on compensable "supplemental proceedings" is 159.1 hours, including 61.2 hours expended by Mr. Brigham, 22.9 hours expended by Mr. Hutson, 43.1 hours expended by Mr. Copeland, and 27.7 hours expended by Mr. Bucalo.

## 2. Additional Factors

Finally, in assessing attorney's fees incurred for supplemental proceedings, § 73.092(2)(a)-(g) instructs the court to consider several additional factors.

First, the court should consider the novelty, difficulty, and importance of the questions involved. This case involved novel, difficult, and important questions involving the issue of determining proper compensation in an eminent domain case.

Next, the court should consider the skill employed by the attorney in conducting the cause. Sunderman Groves's attorneys were skilled litigators with many years of experience. (Doc. 213-1). Ultimately, the attorneys obtained a favorable verdict for Sunderman Groves.

Third, the court should consider the amount of money involved in the case. A large amount of money was involved in this case—the jury awarded Sunderman Groves a total of $309,500 when the final offer by Sabal Trails was $46,600.

Fourth, the court should consider the responsibility incurred and fulfilled by the attorney. The attorneys involved in this action incurred the responsibility of litigating the underlying eminent domain issues of the case, as well as the entitlement to fees.

Fifth, the court should consider any attorney's fee award made under subsection (1). Sunderman Groves is entitled to a "benefits achieved" fee award under § 73.092(1). This award does not provide for any work done on "supplemental proceedings." Therefore, an adjustment of fees for "supplemental proceedings" is not warranted.

Accordingly, Sunderman Groves's request for "supplemental proceedings" fees should be granted in part. Sunderman Groves is entitled to a total of $58,485, which includes 37.7 hours at $450/hour for Mr. Brigham, 23.5 hours at $500/hour for Mr. Brigham, 25.7 hours at $275/hour for Mr. Copeland, 21.6 hours at $325/hour for Mr. Copeland, 22.9 hours at $350/hour for Mr. Hutson, and 27.7 hours at $275/hour for Mr. Bucalo.

### C. Appellate fees under § 73.131

Section 73.131(2), Florida Statutes provides, "[t]he petitioner shall pay all reasonable costs of the proceedings in the appellate court, including a reasonable attorney's fee to be assessed by that court, except upon an appeal taken by a defendant in which the judgment of the lower court shall be affirmed." The lodestar analysis, discussed in detail above, is used to determine the amount of the reasonable appellate fees. *State, Dep't of Transp. v. Skinners Wholesale Nurs., Inc.*, 736 So. 2d 3, 7 (Fla. 1st DCA 1998).

Sunderman Groves requests a total $325,855.50 in appellate fees for defending the judgment on appeal. This includes $73,282.50 for work performed by Mr. Brigham's firm and $252,573 for work performed by True North. Sabal Trail submits that the court should reduce the fees to $187,246.

### 1. Reasonable Hourly Rates

Sunderman Groves seeks the following hourly rates for the attorneys who worked on the appeal: $450/hour for Andrew Brigham; $275 and $325/hour for Scott Copeland; $650/hour for Thor Hearne; $525/hour for Stephen Davis; $525/hour for Abram Pafford; $500/hour for Timothy Belz; $450/hour for Matthew Belz; and $190/hour for paralegals Katherine Payne, Megan Epperson, and Mary Shambro. The lead appellate counsel have reduced their non-local rates from $899/hour for Mr. Hearne, Mr. Davis, and Timothy Belz; $747/hour for Matt Belz; and $203/hour for the paralegals.

Sunderman Groves has provided the declaration of Mr. Brigham and Mr. Hearne to set out the relevant experience of the attorneys who have worked on this case at the circuit court level (Docs. 213-5, 213-6) as well as the affidavit of Raymond T. Ellifett, Jr. to provide an opinion on the reasonableness of appellate fees requested. (Doc. 213-8).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. The relevant legal community is the place where the case is filed. *Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cty., Fla.,* No. 5:13-CV-623-OC-32PRL, 2018 WL 454070, at *1 (M.D. Fla. Jan. 17, 2018) (quoting *Am. C.L. Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). Here, the relevant market is Ocala, Florida, where the

case was filed. The trial court is an expert on the question of the reasonableness of fees and may consider its own knowledge and experience. *Norman*, 836 F.2d at 1303.

"If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Barnes*, 168 F.3d at 437. Sunderman Groves presented the affidavit of Mr. Brigham to detail the difficulty in obtaining co-counsel with experience at the federal appellate level as well as a reputation and familiarity with defending owners regarding their property rights who would consider taking on the matter on contingency of prevailing. (Doc. 213-3, p. 63). Mr. Brigham found that many appellate lawyers expressed concern over potential or perceived conflicts of interests with the companies that have ownership interest in the Sabal Trail Natural Gas Pipeline. (Doc. 213-3, p. 63). Mr. Brigham then suggested that Sunderman Groves retain Mr. Hearne's firm (True North) as co-counsel and lead appellate counsel. (Doc. 213-3, p. 63).

Considering the difficulty Sunderman Groves had in obtaining appellate counsel to take on this issue, and the affidavits detailing the attorney's experience, reputation, and skill, Sunderman Groves's attorneys' requested hourly rates are reasonable. *See Sabal Trail Transmission, LLC*, 2021 WL 1881404, at *16 (N.D. Fla. May 11, 2021) (again, finding in a similar legal community, these rates, including the appellate rates, reasonable). However, because it is impossible to discern when in 2018 Mr. Copeland's rate changed from $275/hour to $325/hour, the court should similarly award a rate of $275/hour for any work done in 2018, and $325/hour for work done in 2020 and 2021.

### 2.   Number of hours reasonably expended

The court must determine the number of hours reasonably expended on the appeal. Notably, the attorney fee applicant bears the initial burden of submitting evidence sufficient to allow the court to confirm that the requested fees are not excessive. *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Then, "'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *Id.* Attorneys "must exercise their own billing judgment to exclude any hours that are excessive, redundant, or otherwise unnecessary." *Galdames v. N&D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011). If applicants do not exercise billing judgment, courts are obligated to do it for them. Courts may cut specific hours, or may engage in "an across-the-board cut," as long as the court adequately explains its reasons for doing so. *Id.*

Sunderman Groves requests a total of appellate fees in the amount of $325,855.50, which includes 139.5 hours expended by Mr. Brigham, 30.3 hours expended by Mr. Copeland, 6.0 hours expended by Mr. Tensfeldt, 209 hours expended by Mr. Hearne, 95.2 hours expended by Mr. Davis, 96.8 hours expended by Mr. Pafford, 22.8 hours expended by Timothy Belz, 4.1 hours expended by Matt Belz, 18.2 hours expended by Ms. Payne, 6.0 hours expended by Ms. Epperson, and .5 hours expended by Ms. Shambro. (Doc. 213-5). Sabal Trail requests multiple reductions in the number of hours expended.

i.      *Discrete and unsuccessful claims*

First, Sabal Trail requests a reduction in hours for time spent on discrete and unsuccessful claims. This includes time billed for drafting a motion for leave to file Amici Curiae and a reconsideration after the initial motion was denied. Sabal Trail also requests the reduction of time spent on attempts at consolidating the appeal with another case before the Eleventh Circuit, which was denied. "In determining reasonable hours, the district court must

deduct time spent on discrete and unsuccessful claims." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)). "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440.

Mr. Brigham spent a total of 7.9 hours on the amicus issue and Mr. Hearne spent 4.2 hours on the issue.[5] Sabal Trail also requests the reduction of time spent on attempts at consolidating the appeal with another case before the Eleventh Circuit, which was denied. Mr. Brigham spent 2.6 hours on the consolidation effort, Mr. Hearne spent 4.3 hours on the issue, and Mr. Davis spent 1.1 hours on the issue.[6]

Here, a reduction of the hours billed for drafting a motion for leave to file Amici Curiae and a reconsideration after the initial motion was denied is reasonable. The defendant's requested relief in both instances (leave to file amici curiae and to consolidate) were ancillary to the actual issues on appeal and were ultimately denied by the Eleventh Circuit. Although the requested relief theoretically could be helpful to the claim, the defendant prevailed even

---

[5] In 2018, Mr. Brigham billed time to the amicus issue on June 14, October 11 and 29, November 5, 6, and 17, and December 11. In 2019, Mr. Brigham billed time to the amicus issue on January 2, 14, and February 6. (Doc. 213-5 at 7-11). The entries on October 11 and 29 are block billed and contain other activities along with the amicus issue. Plaintiff should not be penalized for this lack of imprecision in billing entries, so a reduction is reasonable. *Ceres EnvtI. Servs., Inc*, 476 F. App'x at 203.
   Although Sabal Trail also requested the reduction of billing entries from May 22, October 23, 24, and 28, these billing entries do not mention the amicus issue.
   Mr. Hearne billed time to the amicus issue on October 23, November 6, 2018 and January 2, 2019. (Doc. 213-5 at 17). Sabal Trail also requested that time from October 22 also be reduced, however, this time entry does not mention the amicus issue.
[6] Mr. Brigham billed time to the consolidation issue on March 8, 13, 25, and April 2, 2019. (Doc. 213-5 at 11). Mr. Hearne billed time to the consolidation issue on March 10, 2019, March 26, 2019, and February 3, 2020. Sabal Trail incorrectly included Mr. Davis's March 13 entry involving the consolidation issue in Mr. Hearne's calculation. (Doc. 213-5 at 18).

after each was denied.[7]  Therefore, the court should deduct a total of 10.5 hours (7.9 on the amicus issue and 2.6 hours on the consolidation effort) from Mr. Brigham's time, 8.5 hours (4.2 hours on the amicus issue and 4.3 hours on the consolidation effort) from Mr. Hearne's time, and 1.1 hours from Mr. Davis's time.

*ii.   Incorrect billing entries*

Next, Sabal Trails requests a reduction in time that was incorrectly billed to the appeal. On March 19, 20, and 26, 2019, Mr. Hearne billed five hours for drafting and revising an appellate brief and for analyzing a request for an extension filed by Sabal Trail. (Doc 213-5 at 18).[8]  On March 21, 2019, Mr. Davis billed 10.8 hours to brief, research, review, and revise an 11th Circuit brief. (Doc 213-5 at 18). Sabal Trail contends that these entries correspond to activity in a similar matter in which the landowner filed a response brief on March 21, 2019 (*Sabal Trail v. 1.401 Acres*, No. 18-15259, Brief of Appellee Violeta P. Lara (11th Cir. Mar. 21, 2019)) and where Sabal Trail sought an extension to file a reply brief (*Sabal Trail v. 1.401 Acres*, No. 18-15259, Notice of Docket Activity (11th Cir. Mar. 26, 2019)).

On July 17 and 18, 2019, Mr. Hearne billed 3.2 hours for work on a jurisdictional issue raised in another Sabal Trail matter, the *Wynn* case, which he designated by name in one entry. (Doc. 213-5 at 19).[9]  On July 10, 2019, Mr. Davis billed .4 hours for "Review of Wynn appeal and court's jurisdictional inquiry and correspondence with team members regarding jurisdictional issues and response brief." (Doc. 213-5, p. 19). This time should also be reduced.

---

[7] Sunderman Groves does not address this issue in its motion for attorney's fees and did not request to file a reply to address the issue.

[8] Although Sabal Trail also references a time entry by Mr. Hearne on March 21, 2019, no such time entry exists.

[9] Sabal Trail also asked for a reduction in Mr. Hearns's time billed on July 7, 2019. A review of the time sheet reveals that Mr. Hearne did not bill any hours that day.

Notably, Sunderman Groves did not address the billing entries in its motion or request leave to file a reply to address these issues. Accordingly, Mr. Hearne's time should be reduced by 8.2 hours and Mr. Davis's time should be reduced by 11.2 hours for the issues not related to this matter.

*iii.      Reviewed or duplicated work*

Third, Sabal Trail requests a reduction of time spent by counsel who only reviewed or duplicated the work of others. Specifically, Sabal Trail requests an overall 23.6 reduction in Mr. Copeland's hours, claiming his substantive non-duplicative work consists of only 6.7 hours, and a total reduction of six hours in Mr. Tensfeldt's hours, claiming he made no distinct contribution to the appeal.

According to Sabal Trail, much of Mr. Copeland's work is duplicative of Mr. Bringham's work and primarily involved reviewing filings. In total, Mr. Copeland billed 6.1 hours to review various motions, notices, briefs, and the Eleventh Circuit's opinion.[10] This issue was addressed in Mr. Brigham's declaration (Doc. 213-3 at 66-73), in anticipation that Sabal Trial would object to Mr. Copeland's timekeeping. Out of the five attorneys at Mr. Brigham's firm who worked on this case at the district court level, only Mr. Brigham and Mr. Copeland worked on the appeal. They were primarily responsible for working with the record below, drafting the statement of facts, and briefing the issue as to admissibility of owner testimony. Mr. Brigham asserts that the time Mr. Copeland spent "reviewing" the documents consisted of checking case and record citations, looking up electronic pleading documents to ensure page references were accurate, and assisting with the citations to trial exhibits.

---

[10] Mr. Copeland billed time to "review" these filings and documents on May 23, 2018 (.1 hour), May 31, 2018 (.5 hour), August 24, 2018 (2.0 hours), December 28, 2018 (1.5 hours), August 29, 2019 (.5 hour), and January 22, 2020 (1.0 hour). (Doc. 213-5 at 7-12)

Therefore, 6.1 hours is a reasonable number of hours to review the various documents and filings, over the course of nearly two years, under the circumstances. *Cf. Wilson v. Dep't of Child. & Fams.*, No. 3:02-CV-357J32TEM, 2007 WL 1100469, at *4 (M.D. Fla. Apr. 11, 2007) (finding that 53.3 hours spent reviewing records and conferencing was unreasonable considering the attorney did not contribute to the drafting of the brief).

Sabal Trail also takes issue with 14.5 hours of "duplicative" work where Mr. Copeland's time entries are nearly identical to Mr. Brigham's time entries.[11] Mr. Brigham also addressed this issue in his declaration. (Doc. 213-3 at 66-73). He asserts that the time billed on these items was time spent individually on the matters by each of them. When possible, they coordinated with one another to avoid the duplication of efforts. At times, they would both collaborate on the same document. Mr. Copeland also assisted Mr. Brigham in preparing the mediation statement and during the telephonic mediation, as well as with oral argument. A review of the time entries reflects this. On May 31, 2018, both attorneys billed for the receipt and review of the notice of telephone mediation, and both reviewed the rule on Appeal Conferences. (Doc. 213-5 at 7). On June 13, 2018, both attorneys prepared the certificate of interested persons and corporate disclosure statement. (Doc. 213-5 at 8). On July 9, 2018, both attended the telephonic appellate mediation. (Doc. 213-5 at 8). On August 28, 2018, both attended the telephonic conference with Mr. Hearne and Mr. Davis regarding coordinating the drafting of the answer brief (Doc. 213-5 at 9). On December 28, 2018, both received and reviewed the reply brief. (Doc. 213-5 at 11). On September 10, 2019, both prepared and attended the oral argument. (Doc. 213-5 at 12).

---

[11] The "duplicative" entries are as follows: May 31, 2018 (.5 hours), June 13, 2018 (.5 hours), July 9, 2018 (4.5 hours), August 28, 2018 (1.5 hours), December 28, 2018 (1.5 hours), September 10, 2019 (6.0 hours). (Doc. 213-5 at 7-12).

"There is nothing inherently unreasonable about a client having multiple attorneys." *Barnes*, 168 F.3d at 432 (11th Cir. 1999). A reduction for redundant hours is warranted if the attorneys are unreasonably doing the same work. *Id.* A reduction of Mr. Copeland's time is not warranted because the timesheet and the declaration of Mr. Brigham reflects the "distinct contribution" of each lawyer in the case.

As for Mr. Tensfeldt's time, Sabal Trail requests a reduction of the only two entries made, one for 2 hours on August 2, 2018 to review the trial transcript and one for four hours on October 11, 2018 to review trial transcripts and prepare a list of citations to trial testimony. (Doc. 213-5 at 8-9). Although Mr. Tensfeldt did not do any other work on the appeal, these two entries, totaling six hours, are reasonable in that he assisted in reviewing the trial transcript and then subsequently prepared a list of citations for the trial testimony. Accordingly, a reduction of this time is not warranted.

> iv.    *Time spent litigating the amount of appellate attorney's fees*

Florida law permits an award of fees for time spent litigating the entitlement of fees, but not for time spent litigating the amount of fees. *See Robbins & Robbins, Inc.*, 700 So. 2d at 785 ("Time spent litigating a fee amount is not compensable since the condemnee has no interest in the amount of the fee, the benefit of which inures solely to its attorney."). Sabal Trail requests an overall 50% reduction in time billed to the Sunderman appeal after January 22, 2020, when the Eleventh Circuit determined it did not have jurisdiction to decide whether the defendant was entitled to fees.

Mr. Brigham, Mr. Hearne, Mr. Davis, Timothy Belz, and Matt Belz recorded over 70 entries regarding appellate time pertaining to the defendant's motion to transfer consideration of attorney fees on appeal and supplemental materials. (Doc. 213-5 at 12-13, 20-25). Sabal

Trail claims that after the Eleventh Circuit's decision, the fee amount (not fee entitlement) became the relevant inquiry. Mr. Hearne addressed this argument in his declaration. (Doc. 213-6). He asserts that there was a substantive issue concerning whether the attorney's fees for work on the appeal should be submitted to the Eleventh Circuit, and concerned the entitlement to fees (not fee amount). Although the attorneys did work on issues related to entitlement of fees, a review of the documents filed with the Eleventh Circuit shows that fee amount was also discussed. *See Sabal Trail v. 3.921 Acres, No. 18-11836-G, Memorandum Supplementing Their Motion to Transfer Consideration of Attorney Fees and Expenses on Appeal, (11th Cir. Feb. 19, 2020).*

Unlike the time sheets for similar work at the district court level, the attorneys at the appellate level did not reduce the amount of time spent on tasks associated with determining both the amount and entitlement of attorney's fees. Therefore, a 50% reduction of time spent on issues related to attorney's fees at the appellate level is reasonable. Accordingly, the time spent on the attorney's fees issues is due to be reduced as follows: Mr. Brigham-5.9 hours, Mr. Hearne-18.9 hours, Mr. Davis-34.6 hours, Timothy Belz-11.4 hours, and Matt Belz-2.1 hours.[12]

<i>v.    Time reflecting communications between co-counsel</i>

Sabal Trail requests a 75% reduction in time spent solely communicating between co-counsel. Mr. Brigham's billed 14.1 hours solely on internal communications (including emails and telephonic conferences) regarding substantive matters such as the preparation of the

---

[12] The time entries not included in this calculation are Mr. Brigham's entries for matters not relating to fees (January 22, 2020, January 31, 2020, March 10, 2020, March 12, 2020, and March 27, 2020), Mr. Hearne's entry for work done on the consolidation issue on February 3, 2020, and Mr. Davis's entry for work done drafting a motion for an extension to file a reply brief on March 10, 2020.

defendant's brief and for oral argument.[13] Mr. Brigham's work that involves internal communications is reasonable, considering the nature and substance of the emails and telephonic conferences. Mr. Hearne's timesheet includes 1.2 hours billed on August 17, 2018 that involve internal communications regarding the appeal and background information about the case, which is also reasonable. Mr. Davis billed 1.9 hours solely to internal communications, including discussing oral argument preparation and the application for attoenry's fees, which is reasonable.[14] Timothy Belz billed 4.3 hours solely to internal communications, mostly regarding the attorney fee issue, which is reasonable.[15] Because the hours billed solely communicating between co-counsel is reasonable, a reduction in time is not warranted.

Sabal Trail also requests a 25% reduction in several block-billed entries that include internal communications along with other matters. In total, Mr. Brigham billed 58.6 hours, Mr. Hearne billed 45.1 hours, Mr. Pafford billed 64.6 hours, Mr. Davis billed 12.1 hours, and Timothy Belz billed 9.2 hours.[16]  Many entries are not separated based on how much time is

---

[13] Mr. Brigham's time entries that include internal communications are as follows: 1 hour on August 4, 2018, 1.5 hours on August 28, 2018, 5 hours on October 17, 2018, 2 hours on August 15, 2019, .5 hour on August 22, 2019, .5 hour on August 28, 2019, .5 hour on September 3, 2019, .5 hour on October 3, 2019, .5 hour on December 22, 2019, .5 hour on February 4, 2020, .8 hour on February 4, 2020, and .8 hour on February 5, 2020. (Doc. 213-5).

Sabal Trail also included the entry on March 13, 2019 which involved the unsuccessful motion to consolidate and was recommended to be reduced above. (Doc. 213-5).

[14] Mr. Davis's time entries that include internal communications are as follows: .2 hour on June 10, 2019, .8 hour on January 23, 2020, and .9 hour on January 26, 2020. (Doc. 213-5).

[15] Timothy Belz's time entries that include internal communications are as follows: 1 hour on January 28, 2020, .9 hour on January 30, 2020, .9 hour on February 4, 2020, .8 hour on February 5, 2020, .5 hour on March 23, 2020, and .2 hour March 30, 2020. (Doc. 213-5).

[16] Mr. Brigham's time entries are 3.5 hours on May 17, 2018, 1 hour on June 12, 2018, 2.5 hours on June 30, 2018, 4.5 hours on August 24, 2018, 5 hours on October 18, 2018, 5 hours on October 19, 2018, 10 hours on October 20, 2018, 10 hours on October 21, 2018, 10 hours on October 22, 2018, 1.5 hours on August 29, 2019, 2.5 hours on January 22, 2020, and .3 hour on March 31, 2020. (Doc. 213-5).

spent on each task, and entries include communications among co-counsel as well as drafting and researching different issues. However, most time entries are detailed enough for the court to discern what the attorneys worked on. *See, e.g., Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cty.*, No. 1:16CV93-MW/GRJ, 2021 WL 1881404, at *11 (N.D. Fla. May 11, 2021) (declining to deduct time from block billed entries because the court could ascertain the services rendered). Therefore, a reduction in these entries is not warranted.

*vi.*     *Clerical or secretarial work*

Sabal Trail requests a reduction in paralegal fees because the work done was clerical or secretarial work. "Paralegal fees are recoverable as part of an attorney's fees award." *Taylor Indus. Constr., Inc. v. Westfield Ins. Co.*, No. 8:16-CV-2960-T-SPF, 2020 WL 1873595, at *5 (M.D. Fla. Apr. 15, 2020). However, purely clerical or secretarial tasks should not be billed regardless of who performed them. *Ewoldt v. Robinson*, No. 3:03-CV-1073-J-20TEM, 2007 WL 9718939, at *5 (M.D. Fla. Jan. 11, 2007), *aff'd*, 243 F. App'x 553 (11th Cir. 2007) ("Unrecoverable activities have included work such as gathering materials, copying them, mailing them and refiling them . . . and organizing files, copying documents, checking the docket, updating files, checking court dates and delivering papers).

---

Mr. Hearne's time entries are 8 hours on August 20, 2018, 8.5 hours on October 15, 2018, 4.5 hours on October 18, 2018, 5 hours on October 20, 2018, 2.5 hours on October 22, 2018, 6.5 hours on February 15, 2019, .5 hours on May 24, 2019, .4 hours on June 4, 2019, 4.5 hours on February 2, 2020, 3 hours on February 21, 2020, .5 hour on March 23, 2020, 1.2 hours on March 25, 2020, and .2 hour on March 30, 2020. (Doc. 213-5).

Mr. Pafford's time entries are 1.8 hours September 21, 2018, 1.7 hours on September 25, 2018, 4.4 hours on October 9, 2018, 10.3 hours on October 18, 2018, 9.4 hours on October 19, 2018, 3.2 hours on October 20, 2018, 14.5 hours on October 21, 2018, 13.9 hours on October 22, 2018, and 2.9 hours on October 28, 2018. (Doc. 213-5).

Mr. Davis's time entries are 2.4 hours on February 11, 2020, 2.4 hours on February 21, 2020, 4.9 hours on February 25, 2020, .3 hour on March 23, 2020, .3 hour on March 26, 2020, .7 hour on March 27, 2020, .3 hour on March 30, 2020, and .3 hour on March 31, 2020. (Doc. 213-5).

Timothy Belz's time entries are 1 hour on February 4, 2020, 6.5 hours on February 24, 2020, and 1.7 hours on March 25, 2020. (Doc. 213-5).

A reduction in Ms. Payne's time is reasonable, as she billed 18.2 hours to matters that were clerical or secretarial, including preparing briefing and research binders, preparing appeals materials, and obtaining the transcript from oral argument.[17] Ms. Payne also billed for matters involving the preparation of attorney's fee records amount of attorney's fees to be awarded, which is not awardable under Florida law.[18] *See Robbins & Robbins, Inc.*, 700 So. 2d at 785.

A reduction in Ms. Epperson's time is also reasonable, as she billed a total of 6 hours to working on exhibits to the fee motion, working on a supplemental memorandum to the attorney's fee memorandum, and working on a reply in support of the motion to transfer consideration of the attorney's fee issue.[19] The 2 hours solely spent preparing exhibits are clerical in nature and not awardable. The remaining 4 hours spent on working on the attorney's fee motion should be reduced by 50%, as the entries do not separate the time spent working on the issue of entitlement of fees and the issue of amount of fees. Ms. Shambro billed a total of .5 hour on reviewing the amount of attorney fees and working on calculations, which is not awardable.[20] *Id.*

Therefore, any time spent on clerical matters or the amount of attorney's fees to be awarded should be reduced, including 18.2 hours from Ms. Payne's time, 4 hours from Ms.

---

[17] Ms. Payne's time entries that include purely clerical or secretarial work include 2 hours on July 25, 2019, 4 hours on September 5, 2019, 4.5 hours on September 6, 2019, 1.5 hours on October 9, 2019, .3 hour on January 31, 2020, and 1 hour on March 18, 2020. (Doc. 213-5).

[18] Ms. Payne's time entries that involve preparing attorney fee records include 4.5 hours on February 5, 2020 and .4 hour on February 18, 2020. (Doc. 213-5).

[19] Ms. Epperson's time entries are as follows: 1 hour on February 5, 2020, 1 hour on February 11, 2020, 2 hours on February 19, 2020, and 2 hours on February 25, 2020. (Doc. 213-5).

[20] Ms. Shambro's time entries are as follows: .2 hours on February 18, 2020 and .3 hour on March 18, 2020.

Epperson's time, and .5 hour from Ms. Shambro's time. Sunderman Groves should be awarded a total of 2 hours for Ms. Epperson's time.

Accordingly, Sunderman Groves's request for appellate fees under § 73.131 should be granted in part. Sunderman Groves is entitled to a total of $261,815, which includes 123.1 hours at $450/hour for Mr. Brigham, 21.3 hours at $275/hour and 8 hours at $325/hour for Mr. Copeland, 6 hours at $275/hour for Mr. Tensfeldt, 173.4 hours at $650/hour for Mr. Hearne, 48.3 hours at $525/hour for Mr. Davis, 96.8 hours at $525/hour for Mr. Pafford, 11.4 hours at $500/hour for Timothy Belz, 2.1 hours at $450/hour for Matt Belz, and 2 hours at $190/hour for Ms. Epperson.

### D. Costs under § 73.091

Sunderman Groves seeks a total of $106,080.15 in costs incurred at the district court level pursuant to Florida's constitutional guarantee of "full compensation." Although Sabal Trails argues that federal law, not Florida law, governs the issue of costs to be awarded, this court has already determined that costs will be determined under § 73.091. (Doc. 133). *See also Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cty.*, No. 1:16CV93-MW/GRJ, 2021 WL 1881404, at *21 (N.D. Fla. May 11, 2021) (determining that Florida law governs the issue of costs in an eminent domain proceeding arising from the Natural Gas Act).

In Florida, § 73.091 governs the recovery of reasonable costs in eminent domain actions:

> (1) The petitioner shall pay attorney's fees as provided in s. 73.092 as well as all reasonable costs incurred in the defense of the proceedings in the circuit court, including, but not limited to, reasonable appraisal fees and, when business damages are compensable, a reasonable accountant's fee, to be assessed by that court. No prejudgment interest shall be paid on costs or attorney's fees.
>
> …

(3) In assessing costs, the court shall consider all factors relevant to the reasonableness of the costs, including, but not limited to, the fees paid to similar experts retained in the case by the condemning authority or other parties and the reasonable costs of similar services by similarly qualified persons.

(4)   In assessing costs to be paid by the petitioner, the court shall be guided by the amount the defendant would ordinarily have been expected to pay for the services rendered if the petitioner were not responsible for the costs.

(5)   The court shall make specific findings that justify each sum awarded as an expert witness fee.

Fla. Stat. § 73.091.

Sunderman Groves requests a total of $99,292.87 in costs for expert witnesses, court reporting, printing, travel, and lodging. The parties have agreed to court reporting costs in the amount of $3,841.29.

### 1.  Reasonable Expert Witness Fees

"[C]ondemning authorities are able to provide expert witnesses and appraisers, and if the defendant in condemnation proceedings is to be assured of full compensation he should have the same tools available to him in a defense of his right." *Cheshire v. State Rd. Dep't*, 186 So. 2d 790, 791 (Fla. 4th DCA 1966). However, these costs "are subject to the close scrutiny of the court for the purpose of determining that such costs are reasonable and were necessarily incurred in the defense of the proceeding, and should be allowed only in an amount the court determines necessary and proper." *Id.*

#### i.     *Cantrell Ray Real Estate*

Matthew Ray, the principal of Cantrell Ray Real Estate ("CRRE"), appraised Sunderman Groves's property. CCRE billed a total of $65,372.85 in appraisal fees, which included $55,503.38 due to Mr. Ray, $6,236.47 to Rikke Mihos, $1,796.62 to Sarah

Pinkepank, and $1,836.38 in out-of-pocket expenses. As part of a compromise, Sunderman Groves reduced this amount by 10%, to $58,835.57.

Sabal Trail requests a reduction in requested CRRE fees due to the unreliability of the timekeeping. Sabal Trail notes that in other fee and costs matters, it objected to CRRE time records as being unreliable because a comparison of CRRE's invoices in 44 Sabal Trail cases revealed that the members of CRRE's team often billed over 24 hours a day. Sabal Trail has included charts for each appraiser reflecting such calculations. (Docs. 216-1, 216-2, 216-3). In response to these objections, Sunderman Groves filed a new CRRE invoice dated April 21, 2021. (Doc. 213-2). Mr. Ray acknowledged the billing errors in his declaration, and notes that the revised bill is accurate. (Doc. 213-9). Because a corrected invoice was provided and the billing errors acknowledged, a reduction in hours is not warranted.

Sabal Trail also requests a reduction in CCRE's fees due to the court's exclusion of portions of Mr. Ray's opinion. An expert fee is due to be reduced when the work was related to evidence excluded from the trial. *Miami-Dade Cty. v. City Nat. Bank of Fla.*, 761 So. 2d 368, 370 (Fla. 3d DCA 2000). Here, the court excluded Mr. Ray's testimony. (Doc. 71). After the court's ruling, Mr. Ray re-appraised Sunderman Groves's property.

In Mr. Brigham's declaration, he outlines the reduction in fees requested for CRRE services. He notes that any time spent on the appraisal methodology excluded by the court was entirely excluded by Sunderman Groves in the fee request. (Doc. 213-3). Mr. Ray noted that most of the work on the excluded appraisal methodology was done prior to October 12, 2017, which is when the invoice begins. (Doc. 213-9 at 3). To prepare a revised appraisal, Mr. Ray removed the exhibit depicting the excluded appraisal methodology, removed references to the methodology in the text of his report, and adjusted the mathematical formula. (Doc.

213-3 at 43). Mr. Ray estimated that the time expended on these tasks totaled 1.5 hours. (Doc. 213-9 at 4). The court also excluded Mr. Ray's opinion because it "double dipped" by not properly accounting for the area encumbered by the pipeline easement. Mr. Ray amended the reported data and spent approximately 4 hours on the issue. (Doc. 213-9 at 4). Lastly, the court determined that the inclusion of dissimilar properties in the appraisal report was improper. Mr. Ray amended his appraisal by removing the dissimilar pairings and added further details to the report. The time spent on this task has been removed from Mr. Ray's invoice. (Doc. 213-9 at 46).

Sabal Trail's requested 50% reduction in CRRE's time due to the unreliability of the time records and the court's decision to exclude Mr. Ray's opinion is not warranted. Sunderman Groves has decreased the CRRE fee by 10% and excluded several portions of Mr. Ray's work from his invoice. In his declaration, Mr. Ray stated that any work done correcting his opinion in light of the court's exclusion of his opinion was not duplicative and necessary regardless of whether it was performed due to the court's order or on the initial appraisal. (Doc. 213-p at 4-5). Ultimately, the work of Mr. Ray and the others at CRRE was necessary for Sunderman Groves to defend this proceeding. *Cheshire*, 186 So. 2d at 791. The jury rejected Sabal Trail's "zero damage" value estimate and instead returned a verdict including severance damages between Mr. Ray's opinion and the landowner's opinion. (Doc. 213-3 at 42).

Sabal Trail requests a reduction in CRRE's claimed out of pocket expenses, totaling $1,836.38. Mr. Ray noted that the out-of-pocket expenses include milage costs, mailing costs, and travel costs. (Doc. 213-9 at 7). The invoice does not provide a detailed breakdown of these expenses. Therefore, the out-of-pocket expenses totaling $1,836.38, should not be included in the final award of costs. (Doc. 213-2, 213-9). *See Dep't of Transp. v. Skidmore*, 720 So. 2d 1125,

1130 (Fla. 4th DCA 1998) (determining that expenses such as travel, postage, and delivery services should not be taxed as costs); *Sabal Trail Transmission, LLC*, 2021 WL 1881404, at *22 (excluding out-of-pocket expenses when a detailed breakdown of expenses was not included in the invoice).

Further, the rates charged by CRRE are reasonable. Mr. Ray charged a rate of $295/hour, which Sabal Trail does not object to. Mr. Ray graduated from Florida State University with a Bachelor of Science in Real Estate in 1999. (Doc. 213-9). He is a State Certified General Real Estate Appraiser in Florida and North Carolina. (Doc. 213-9). He is a designated member of the Appraisal Institute, which is the highest possible qualification for a real estate appraiser. (Doc. 213-9). Given Mr. Ray's experience and qualifications in real estate appraisal, his fee is reasonable.

Sabal Trail objects to the $190/hour rate charged for Ms. Mihos and Ms. Pinkepank According to Sabal Trail, Ms. Mihos and Ms. Pinkepank charged $125/hour as research assistants between 2015 and their licensures in 2018, but provides no evidence of this. Sabal Trail also provides no evidence for its claim that another licensed CRRE appraiser charged $150-$165/hour. Sabal Trail suggests a rate of $150/hour for pre- and post-licensure work. Notably, the defendant has not provided any evidence to support the reasonableness of the rates charged by Ms. Mihos and Ms. Pinkepank.

A review of the CCRE invoice reveals Ms. Mihos logged a total of 32.82 hours, but logged no time after becoming a licensed appraiser in 2018. Ms. Pinkepank logged a total of 9.46 hours, 4.47 hours were billed after she became a licensed appraiser in 2018. Several entries prior to 2018 appear to be clerical work, which are due to be reduced. Ms. Mihos spent five hours on clerical work, including reviewing and organizing property documents. Ms.

Pinkepank spent 1.18 hours on clerical work, including compiling electronic files, planning a route, preparing mailings, and organizing files. These hours should be excluded from the total time.

Ms. Mihos and Ms. Pinkepank's requested rate of $190/hour is reasonable, considering their education and experience working for CRRE since 2014. (Doc. 213-9 at 12). Therefore, Ms. Mihos should be compensated for a total reasonable time of 27.82 hours, totaling $5,285.80 and Ms. Pinkepank should be compensated for a total reasonable time of 8.28 hours, totaling $1,573.20.

Accordingly, Sunderman Groves's request for CRRE appraisal fees should be granted in part for a total of $55,824.53.

ii.     *Terra Alta Group*

In addition to CRRE's appraisal services, Sunderman Groves retained Brad England and his company Terra Alta Group as a Global Information System ("GIS") Mapping Consultant to prepare exhibits for this case. Terra Alta Group charged $6,600 for its services, which the defendant has reduced to $6,350, as a compromise.

As an initial matter, Mr. England's rate of $100/hour is reasonable. Mr. England has over 20 years' experience as a GIS professional. Defendant provided the declaration of Shawn Barnett, a certified GIS executive with 30 years of experience who provided his opinion that Mr. England's rate of $100/hour for GIS work is reasonable given Mr. England's certification and experience. (Doc. 213-11).

The court must next determine if the expert costs were reasonable and necessarily incurred in the defense of the proceeding. *Cheshire,* 186 So. 2d at 791. Mr. England performed 66 hours of work creating GIS maps for the Sunderman Groves property. In total, Mr.

- 28 -

England created 115 exhibits, 56 of which were prepared for the instant case, and the remaining were prepared for common use among all Sabal Trail cases and were prorated among the cases. (Doc. 213-3 at 48). Mr. Brigham notes that the exhibits were created for Mr. Ray's appraisal report, to be used at mediation, for hearings before the court, and for jury trial (both for the case in chief and for impeachment purposes). (Doc. 213-3 at 48-49). Ultimately, only 10 exhibits were admitted into evidence at trial. (Doc. 216-4). Because of this, Sabal Trail objects to $6,025.95 of the requested fees, and submits only the exhibits admitted to trial should be included in the cost determination.[21]

In his declaration, Mr. England stated that he removed 2.5 hours from his invoice relating to the appraisal methodology used by Mr. Ray. (Doc. 213-10). Sabal Trial requests a significant reduction in Terra Alta Group fees—from the requested $6,350 to $573.90—but cites to no case law to support this reduction. Additionally, Sabal Trail objects to Terra Alta Group fees because Mr. England was not listed as an expert in disclosures. "All that is necessary is that the expert render an opinion or perform services which are helpful in determining the valuation of the property." *State, Dep't of Transp. v. Woods*, 633 So. 2d 94, 95 (Fla. 4th DCA. 1994).

Considering the large number of exhibits created by Mr. England and not ultimately used in this case, a 50% reduction in fees is reasonable. Notably, only 56 exhibits were prepared specifically for this case, and although Mr. Brigham broadly explains why the exhibits were created, it is unclear what the purpose was for the other 59 exhibits prepared for common use among all Sabal Trail cases.

---

[21] Sabal Trail calculated this number by dividing the invoice amount of $6,600 by 115 exhibits ($57.39 per exhibit) then multiplying the amount by the ten exhibits admitted into evidence ($573.90) then subtracting that amount from the total invoice amount ($6,026.10).

Accordingly, Sunderman Groves's request for fees for Terra Alta Group services should be granted in part for a total of $3,175.

iii.    *Ken Fleming*

Ken Fleming performed droning services for Sunderman Groves and took ground and aerial photographs and video. Mr. Fleming is a project manager and drone pilot employed by Mr. Brigham's firm. Mr. Fleming recorded 128 hours of drone services in this case, and charges $150/hour for his services. Sabal Trail objects to these charges because of Mr. Fleming's involvement in the case not as an expert to opine on valuation, but as an employee with Mr. Brigham's firm.

Mr. Brigham's declaration attempts to explain the necessity of Mr. Fleming's services. (Doc. 213-3 at 50). Five years ago, Mr. Brigham's firm decided to purchase a drone equipped with a camera and Mr. Fleming went through the necessary drone training. These services would otherwise be outsourced to a third-party vendor for drone piloting to take aerial and ground photos and videos of the property. Although it seems the droning services were indeed helpful to Sunderman Groves's case, the services are more properly accounted for under the "benefits achieved" fee award pursuant to § 73.092(1), and not an award of costs under § 73.091. *See Sabal Trail Transmission,* 2021 WL 1881404, at *27 (classifying Mr. Fleming's droning services fee as properly accounted for in the "benefits achieved" fee award and declining to award additional fees for his services under § 73.091).

Mr. Fleming was not hired as an expert witness and he did not render an opinion on the property's just valuation. *Woods*, 633 So. 2d at 95. His droning services were used to assist Sunderman Groves's attorneys in the litigation. *Id.* Additionally, "[t]axing general overhead expenses as costs in an eminent domain case is improper." *See Sabal Trail Transmission,* 2021

WL 1881404, at *27 (citing *Seminole Cty. v. Chandrinos*, 816 So. 2d 1241, 1246 (Fla. 5th DCA 2002)). Because Mr. Fleming was an employee of Mr. Brigham's firm, who's droning services were used to assist the attorneys in the litigation, it is improper to classify his services as "costs" under § 73.091.

Accordingly, Defendant's request for $19,200 for Mr. Fleming's services should be denied.

## 2. Copy and office supply costs

Sunderman Groves seeks $7,882.14 in copy costs for Copy Right, a third-party vendor and litigation support company that assists in preparing exhibits for trial and $229.42 for an Office Depot invoice for supplies used at trial.

Florida's Uniform Guidelines apply to the taxation of costs in eminent domain proceedings, but the court has discretion to "deviate from the Guidelines depending on the facts of the case as justice may require." *Skidmore,* 720 So. 2d at 1130. The Guidelines provide that "costs of copies of documents filed . . . with the court, which are reasonably necessary to assist the court in reaching a conclusion" and "costs of copies obtained in discovery" are awardable. Fla. R. Civ. P. Taxation of Costs. Ultimately, the award of costs is left to the discretion of the court. *Id.*

The $229.42 Office Depot invoice contains three-ring binders, highlighters, legal pads, a USB electronic adapter, and an HDMI cable. Typically, office expenses are not recoverable as costs and should therefore be excluded. *Bolton v. Bolton*, 412 So. 2d 72, 73 (Fla. 2d DCA 1982).

Sabal Trail agrees with only $915.07 for copy costs, consisting of $819.07 from invoice #40827 for costs incurred in discovery for exhibits for the deposition of Sabal Trail's appraiser

(pro-rated between four other cases) and $96.00 from invoice #42203 for the ten 8.5x11"
paper copies of the exhibits admitted at trial.

Sabal Trial objects to invoice #36001, totaling $20.33, for large format scans related to
initial pleadings; invoice #40561, totaling $866.70, for exhibits used in mediation; and invoice
#42152, totaling $693.36, for board mounted exhibits for the settlement conference held on
February 20, 2018. These costs should be excluded, as they were not filed with the court,
obtained in discovery, and were not reasonably necessary to assist the court in reaching a
conclusion.

Invoice #42203 totals $5,482.68 for preparing trial exhibits for the jury trial. Sabal trail
requests a significant reduction in these costs, arguing that the charges are for large foam
mounted flip chart demonstrative aids and the court should only award costs for the 8.5x11"
copies of the 10 exhibits admitted at trial. However, although it's not possible for the court to
know how many of the demonstrative aids were reasonably necessary for the jury to make a
decision, a portion of these costs should be awarded. Sabal Trail proposes that the court
should award $1,248 for demonstrative aids, consisting of one-third of the exhibits billed at a
rate of $96 each. However, considering the various sizes and types of demonstrative aids
ranged in prices from $96 to $612, it is more reasonable for the court to award one-third of
the total billed on the invoice. Therefore, a total of $1,827.56 is a reasonable amount to award
to account for the usefulness of the demonstrative aids at trial.

Accordingly, Defendant's request for copy costs should be granted in part for a total
of $2,646.63 and the request for office supply costs should be denied.

### 3. Travel and lodging costs

Finally, Defendant requests $2,954.45 in travel and lodging costs incurred by counsel during the four-day trial.

The Guidelines provide that attorney travel expenses should not be taxed as costs. Fla. R. Civ. P. Taxation of Costs. Lodging and traveling expenses "represent litigation expenses voluntarily incurred by appellants who elected to employ counsel to represent them who lived a considerable distance from the city in which the case was being litigated." *Plante v. Canal Auth.*, 218 So. 2d 243, 248 (Fla. 1st DCA1969).

Accordingly, Sunderman Groves's request for travel and lodging costs should be denied.

### III.   RECOMMENDATION

Accordingly, it is recommended that Sunderman Groves's motion for attorney's fees and costs (Doc. 213) be granted in part as set forth above. Sunderman Groves should be awarded a total of $144,210 in district court attorney's fees, $261,815 in appellate attorney's fees, and $61,646.16 in district court costs.

Recommended in Ocala, Florida on November 1, 2021.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy